UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RITA KARRIP,

        Plaintiff,                                  Hon. Gordon J. Quist

v.                                                       Case No. 1:18-cv-406

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Income Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social

1

security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **PROCEDURAL POSTURE**

Plaintiff was 43 years of age on her alleged disability onset date. (PageID.317). She successfully completed high school and worked previously as a financial institution manager and a mortgage underwriter. (PageID.67, 81). Plaintiff applied for benefits on July 19, 2013, alleging that she had been disabled since October 15, 2008, due to neuropathy in her lower back and both legs, arthritis in her neck, bursitis, and polyneuropathy. (PageID.317-18, 361).

Plaintiff's application was denied following a hearing before an Administrative Law Judge (ALJ). (PageID.120-82). This decision was subsequently vacated by the Appeals Council and remanded for further administrative action. (PageID.189-91). On February 15, 2017, Plaintiff appeared before ALJ Michael Condon with testimony being offered by Plaintiff and a vocational expert. (PageID.77-118). In a written decision dated March 9, 2017, the ALJ determined that Plaintiff was not disabled. (PageID.47-68). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (PageID.33-37). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on September 30, 2014. (Tr.50); see also, 42 U.S.C. § 423(c)(1). To be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that she became disabled prior to the expiration of her insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

4

capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that as of the date Plaintiff's insured status expired, Plaintiff suffered from: (1) degenerative disc disease of the cervical spine; (2) left knee mucoid degeneration versus partial tear of the anterior cruciate ligament; (3) mild degenerative changes of the lumbar spine; and (4) chronic bronchitis, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.50-56).

The ALJ further determined that as of the date Plaintiff's insured status expired Plaintiff retained the capacity to perform light work subject to the following limitations: (1) she could lift/carry 20 pounds occasionally and 10 pounds frequently; (2) during an 8-hour workday, she could sit and stand/walk for 6 hours each; (3) she could occasionally crouch and climb ramps/stairs, but could never climb ladders, ropes, or scaffolds; (4) she could not crawl or kneel, but could frequently balance and stoop; (5) she could have occasional exposure to wetness, humidity, fumes, odors, dusts, gases and areas of poor ventilation; (6) she could have occasional exposure to hazards, including unprotected heights and dangerous moving machinery; and (7) she could not operate leg or foot controls with her left lower extremity.   (PageID.56-57).

A vocational expert testified that if Plaintiff were limited to the extent reflected in the ALJ's RFC assessment, she would still be able to perform her past relevant work as a manager

and mortgage underwriter. (PageID.110-11). Based on this evidence, the ALJ concluded that Plaintiff was not entitled to disability benefits.

## I. Medical Evidence

In addition to Plaintiff's testimony at the administrative hearing, the administrative record contained almost 400 pages of Plaintiff's medical treatment records. The ALJ described this evidence as follows:

> In November 2010, shortly prior to the amended alleged onset date, x-ray imaging of the lumbar spine showed a minimally levoscoliotic curve measuring less than three degrees and a transitional and nearly sacralized LS segment; however, the imaging study was otherwise unremarkable (Ex. 3F/3). X-rays of the cervical spine showed straightening of normal cervical lordosis, mild spondylosis between C4 and C6, and foraminal encroachment at the C5-C6 level bilaterally and the C4-C5 level on the left; however, the x-rays were otherwise unremarkable (Ex. 3F/3). In April 2012, x-ray imaging of the left knee was unremarkable (Ex. 5F/3). In February 2017, after the date last insured, an MRI of the left knee showed mucoid degeneration versus partial tear of the anterior cruciate ligament with otherwise unremarkable findings (Ex. 21F/1). An MRI of the lumbar spine revealed degenerative changes superimposed on levoconvex curvature with lateral recess and neural foraminal stenosis at the L4-L5 levels; however, the findings were no more than mild (Ex. 20F/1). An MRI of the cervical spine showed multilevel degenerative changes with minor reversal of the normal cervical lordotic curvature with changes most prominent at the C4-C5, C5-C6, and C6-C7 levels, but without convincing compression deformity or convincing cord signal abnormality (Ex. 23F/1-2).
>
> The objective examination findings also do not support the extent of the claimant's alleged limitations. At times, the claimant reported subjective tenderness with palpation and/or range of motion (Ex. 5F/2; 13F/1; 16F/4-5; and 19F/7, 24, 43). In April 2012, she had decreased left knee range of motion, subsequently presenting with swelling and positive findings upon anterior drawer testing (Ex. 5F/2-3). In September 2013, the claimant had left knee crepitus and reduced left knee flexion (Ex. 10F/4-5). She had difficulty heel and toe walking, squatting, and hopping; however, these difficulties were only mild (Ex. 10F/4). In November 2013, she had reduced,

but symmetrical, reflexes (Ex. 11F/2). In June 2014, she had lumbar paraspinal muscle spasms (Ex. 12F/4). In September 2014, Ms. Rorick noted the claimant had sensory changes and decreased range of motion due to pain (Ex. 13F/1; *But see* Ex. 14F). During a consultative evaluation in April 2015, subsequent to the date last insured, the claimant presented with hypersensitivity upon examination of the legs, although it was also noted her sensation was intact (Ex. 16F/4). She was unable to touch her toes due to complaints of pain and her left knee was slightly swollen with some swelling of the metacarpophalangealjoints observed (Ex. 16F/4). She had muscle spasms and reduced range of motion upon examination of the lumbar spine (Ex. 16F/4-8). At an office visit, she had reduced strength of the upper extremities due to generalized weakness as well as edema and a mild hand tremor, with mild lower extremity edema observed in July 2015 (Ex. 19F/7-11). In June 2016, she had slight ratcheting with extension of the left knee (Ex. 19F/24).

However, the objective examination findings otherwise generally demonstrate unremarkable findings. She has presented without acute distress (Ex. 6F/2-10; 14F/3-7; 16F/3; 19F/7-43). In November 2010, the claimant had normal range of motion of the lumbar and cervical spine, normal range of motion of the knees, intact grip strength, unimpaired dexterity, negative straight leg raise testing, intact sensation and reflexes, a normal gait, and normal motor strength and tone with no difficulty getting on or off the exam table, squatting, heel and toe walking, and hopping as well as no joint laxity, crepitus, or effusion (Ex. 3F/5-7). In December 2012, the claimant presented with normal inspection of the neck (Ex. 6F/2 and 10). She had normal range of the extremities with no tenderness as well as normal motor and sensory findings (Ex. 6F/2 and 10). In September 2013, she had intact grip strength, unimpaired dexterity, negative straight leg raise testing, intact reflexes, and no difficulty getting on or off the examination table, paravertebral muscle spasm, or joint laxity or effusion (Ex. 10F/4 and 7). She had full range of motion of the cervical and lumbar spine (Ex. 10F/5). She presented with intact motor strength, normal muscle tone, intact sensation, and a normal gait with no use of an assistive device (Ex. 10F/6). In October 2013, the claimant presented with normal strength of the upper extremities as well as no lower extremity weakness (Ex. 12F/l). In November 2013, the claimant presented with full range of motion of the lumbar and cervical spine, full range of motion of the joints, intact 5/5 upper and lower extremity strength, negative straight leg raise testing, and no tenderness to palpation (Ex.11F/2).

She was able to stand on her heels and toes (Ex. 11F/2). She had intact sensation with no allodynia or hyperesthesia (Ex. 11F/2).

Upon evaluation in June 2014, the claimant had no abnormalities upon examination of the cervical, thoracic, or thoracolumbar spine (Ex. 12F/4). Despite some muscle spasms, she had no abnormalities upon examination of the lumbar/lumbosacral spine with no tenderness to palpation and negative straight leg raise testing (Ex. 12F/4). She had no lower extremity weakness and she was able to stand on her heels and toes (Ex. 12F/4). She had intact sensation and a normal gait (Ex. 12F/4). In August 2014, the claimant denied having neck pain (Ex. 12F/7). She presented with normal motor strength and gait with no coordination difficulties (Ex. 12F/8). In September 2014, the claimant had normal gait, stand, and coordination with Ms. Rorick observing the claimant had overall normal findings upon examination of the musculoskeletal system (Ex. 14F/3). Although Ms. Rorick noted in a residual functional capacity assessment that the claimant had sensory changes and decreased range of motion due to pain, such findings were not present in a treatment note completed at or around the same time (Ex. 13F/1 and 14F/3).

In January 2015, subsequent to the date last insured, the claimant had normal coordination, gait, and station (Ex. 14F/7). During an internal medicine consultative evaluation in April 2015, the claimant had intact deep tendon reflexes and normal motor system findings (Ex. 16F/4). Despite some evidence of hypersensitivity of the skin of the legs, her sensation was also noted to be intact and she had no hypersensitivity of the arms (Ex. 16F/4). She was ambulatory without a walking aid with no lurching, swaying, or falling (Ex. 16F/4). She was able to squat completely (Ex. 16F/4). She had no limitation of range of motion upon examination of the left knee or hands (Ex. 16F/4 and 9). She had negative straight leg raise testing (Ex. 16F/4). Upon examination of the neck, she had no spasms or limitation in range of motion (Ex. 16F/4 and 8). She was able to open a jar, button clothing, write legibly, pick up a coin, and tie her shoelaces (Ex. 16F/4). She subsequently presented with an unremarkable gait (Ex. 17F/3). In July and December 2015, she had normal neurological findings, including normal gait and coordination with no tremor (Ex. 19F/7-16). At an office visit in April 2016, the claimant denied having neck pain (Ex. 19F/18; *See also* Ex. 19F/22). She presented with a normal gait (Ex. 19F/19-20). In June 2016, upon examination of the left knee, the claimant had range of motion within normal limits with no crepitus or laxity (Ex.

19F/24). In August 2016, the claimant had unremarkable findings upon examination of the musculoskeletal and neurological systems (Ex. 19F/28-29). In September 2016, she had normal gait and coordination (Ex. 19F/32-39). In December 2016, the claimant had no costovertebral angle tenderness (Ex. 19F/43). Her left knee range of motion was within normal limits with no laxity (Ex. l 9F/43). She had normal neurological findings including normal coordination and gait (Ex. 19F/43).

The medical evidence of record shows the claimant received generally conservative treatment for her pain complaints (Ex. IF-22F). The claimant was prescribed medication, including Ultram (tramadol) (Ex. 1F-3F; 5F; 10F-16F; and 19F). At the hearing, the claimant reported a history of chiropractic adjustment, as well as use of heat and cold. However, the medical evidence of record does not demonstrate the claimant participated in physical therapy or administration of injections, or that she was advised to have surgery. She testified surgical repair of her knee was not recommended *(See also* Ex. 19F/21).

The medical evidence of record also demonstrates some improvement with the claimant's conservative treatment. In April 2012, the claimant reported improvement in her left knee pain (Ex. 5F/1-2). In November 2013, she reported her pain was better with medication (Ex. 11F/1). In September 2016, she noted her pain was moderately controlled with tramadol (Ex. 19F/31).

In September 2016, Ms. Rorick and Dr. Florek [reported] tramadol could cause increased drowsiness (Ex. 22F/3; *See also* Ex. 10E/8). However, the medical evidence of record demonstrates the claimant has been prescribed tramadol for many years, with no recommendation to discontinue this due to reported side effects (Ex. 1F-22F). As demonstrated above, the medical evidence of record demonstrates the claimant had intact cognitive function during evaluations, presenting with intact memory and normal concentration (Ex. 3F/5; 10F/4; 17F/4-5; and 19F/7-44).

The medical evidence of record shows the claimant has some limitations arising from chronic bronchitis; however, the objective medical evidence of record does not support the extent of the claimant's alleged limitations. In October 2010, shortly prior to the amended alleged onset date, the claimant presented with frequent coughing spells consistent with acute bronchitis (Ex. 15F/8). The record shows she sought emergent evaluation of bronchitis in

> January and December 2012 (Ex. 6F). In January 2012, the claimant had a raspy voice with an initial pulse oximetry rating of 88 percent for which she was placed on oxygen; however, she subsequently had improved oxygen saturation levels and normal respiratory findings (Ex. 6F/19 and 26). In December 2012, during an emergency room evaluation of acute bronchitis with bronchospasm 20, the claimant presented with wheezing and coughing (Ex. 6F/2-7). At a consultative evaluation in September 2013, the claimant had mild dyspnea with increased anterior-posterior diameter, moderate bronchial breath sounds, and prolonged expiratory phase (Ex. 10F/4). She was diagnosed with chronic bronchitis (Ex. 10F/7). In July 2015, the claimant had abnormal breath sounds and rhonchi (Ex. 19F/11).
>
> However, the claimant otherwise presented with normal or unremarkable respiratory findings (Ex. 6F/10-19; 11F/2; 12F/1, 4, 8; 14F/3, 7; 15F/8; 16F/4; and 19F/7-43). Imaging studies performed in December 2012 and August 2013 were unremarkable (Ex. 6F/16 and 8F/6). In January 2012, following treatment while at the emergency room, the claimant's oxygen levels increased from 88 percent to 93 percent and later to 97 percent on room air (Ex. 6F/19-26). In December 2012, during an emergency room evaluation of bronchitis, the claimant presented with normal respiratory findings and a 98 percent pulse oximetry level on room air (Ex. 6F/10-15). During a consultative evaluation in September 2013, despite some positive findings, the claimant had no accessory muscle use or hypoxia (Ex. 10F/4 and 7).
>
> The medical evidence of record shows the claimant received some treatment for her chronic bronchitis, including evaluation and treatment at the emergency room in January and December 2012 (Ex. 6F and 19F). In April 2015, the claimant noted she took medication and used an inhaler when she experienced episodes of bronchitis, but did not report daily use of medication to treat her respiratory symptoms (Ex. 16F/3). The medical evidence of record does not demonstrate any evidence of hospitalization due to the claimant's chronic bronchitis nor does it show a need for ongoing emergency room treatment (Ex. 1F-22F). In February 2017, Ms. Rorick stated the claimant as treated at urgent care clinics three times since January 2017; however, the undersigned notes that these visits occurred after the date last insured.

(PageID.58-61).

## II.     The ALJ Properly Evaluated the Opinion Evidence

As discussed below, two physicians submitted statements that Plaintiff was more limited than the ALJ recognized in his RFC assessment. The ALJ, however, afforded less than controlling weight to these opinions. Plaintiff argues that she is entitled to relief because the ALJ's rationale for discounting her treating physician's opinions is not supported by substantial evidence. Plaintiff also argues that she is entitled to relief because the ALJ failed to articulate good reasons for discounting the opinion from a nurse who treated her.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human

11

*Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

A.     Dr. R. Scott Lazzara

On September 11, 2013, Dr. Lazzara conducted a consultive examination of Plaintiff following which he reported that Plaintiff was limited to carrying no more than 15 pounds. (PageID.588-94). The ALJ, who concluded that Plaintiff could occasionally lift up to 20 pounds, obviously disagreed with this aspect of Dr. Lazzara's opinion. The ALJ offered two reasons for discounting the doctor's opinion, both of which are supported by substantial evidence.

The ALJ first noted that "[t]he medical evidence of record does not demonstrate an ongoing treatment relationship" between Plaintiff and Dr. Lazzara. (PageID.63). As is well recognized, the treating physician doctrine "is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once." *Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 506 (6th Cir. 2006). When assessing whether an opinion from a care provider is entitled to deference, the question is not whether the care provider later established a "treating physician" relationship with the claimant, but instead whether such relationship existed as of the date the opinion in question was rendered. As the Sixth Circuit has observed:

> But the relevant inquiry is not whether [the doctor] might have become a treating physician in the future if [the claimant] had visited him again. The question is whether [the doctor] had the ongoing relationship with [the claimant] to qualify as a treating physician *at the time he rendered his opinion*."

*Ibid.*

Accordingly, "a single visit [to a care provider] does not constitute an ongoing treatment relationship." *Ibid.* Moreover, "depending on the circumstances and the nature of the

13

alleged condition, two or three visits often will not suffice for an ongoing treatment relationship." *Id.* at 506-07.

It appears that the only other time Plaintiff met with Dr. Lazzara was on November 16, 2010, when Dr. Lazzara conducted a one-time consultive examination. (PageID.519-23). Thus, as of September 11, 2013, Dr. Lazzara did not have a treating relationship with Plaintiff. As such, Dr. Lazzara was not properly considered a treating physician whose opinion is entitled to any special deference. However, even if Dr. Lazzara were considered a treating physician, as the ALJ observed the medical evidence, including Dr. Lazzara's own findings and observations, do not support the conclusion that Plaintiff cannot carry more than 15 pounds. Accordingly, this argument is rejected.

    B.  Dr. Siva Sankaran

On April 1, 2015, Dr. Sankaran conducted a consultive examination of Plaintiff following which the doctor reported that Plaintiff experienced greater functional limitations than the ALJ recognized. (PageID.632-45). For example, the doctor concluded that during an 8-hour workday, Plaintiff was unable to stand or walk more than one hour each. (PageID.641). The doctor also reported that Plaintiff's ability to use her upper extremities and engage in certain postural movements was more limited than the ALJ recognized. (PageID.642-43). Again, the ALJ offered several reasons for discounting the doctor's opinion, all of which are supported by substantial evidence.

The ALJ first noted that Dr. Sankaran only examined Plaintiff on this one occasion. (PageID.64). Plaintiff has identified nothing in the record to the contrary. Thus, Dr. Sankaran is not properly considered a treating physician whose opinions are entitled to any deference. The

14

ALJ also noted that Dr. Sankaran did not examine Plaintiff until after the expiration of her insured status. As such, the doctor's opinion as to Plaintiff's condition as of the date her insured status expired is without basis and was properly discounted. Finally, as the ALJ observed the medical evidence, including Dr. Sankaran's own findings and observations, do not support his extreme opinions. Accordingly, this argument is rejected.

      C.     Nurse Practitioner Margaret Rorick

On September 30, 2014, Rorick completed a report concerning Plaintiff's physical capabilities. (PageID.608-10). Rorick reported that Plaintiff suffered from depression and anxiety which "constantly" interfered with her ability to perform "even simple work tasks." (PageID.609). Rorick reported that during an 8-hour day, Plaintiff can sit and stand/walk for only 2 hours each. (PageID.609). Rorick also reported that Plaintiff could occasionally lift/carry 10 pounds, but could only rarely lift/carry 20 pounds. (PageID.610).

The ALJ afforded "little weight" to Rorick's opinions. (PageID.65-66). Plaintiff acknowledges that Rorick is not a treating source whose opinions are entitled to deference, but argues that she is nevertheless entitled to relief because the ALJ's rationale for discounting Rorick's opinions is not supported by substantial evidence. In support of his decision to discount Rorick's opinions, the ALJ stated:

> Ms. Rorick has treated the claimant since before the amended alleged onset date (Ex. 2F; 12F- 15F; 19F; and 22F). However, her assessment is not consistent with her own examination findings (Ex. 2F; 12F-15F; 19F; and 22F). Specifically, on August 26, 2014, the claimant presented with unremarkable physical examination findings, including normal strength and gait (Ex. 12F/7-8). On September 26, 2014, during an examination four days prior to the date of this assessment, Ms. Rorick noted the claimant had unremarkable neurological findings and noted the claimant's findings related to her musculoskeletal system were normal overall

> (Ex. 14F/3). Additionally, this assessment is not consistent with the medical evidence of record as a whole, which shows some positive findings but with frequently unremarkable respiratory and neurological findings (Ex. 1F-23F). Although the claimant sought emergent evaluation of respiratory conditions a few times, the medical evidence of record documents relatively conservative treatment such that the claimant's impairments were primarily treated with medication with no injections, physical therapy, surgery, or hospitalizations (Ex. 1F-23F). The assessed mental limitations are not consistent with the findings from mental status examinations, which demonstrate frequently unremarkable findings including cooperative behavior, frequently unremarkable moods and/or affects, and intact cognitive functioning with generally intact concentration and normal memory (Ex. 1F-19F). Accordingly, the undersigned gives little weight to this assessment.

(PageID.65-66).

Contrary to Plaintiff's argument, the ALJ clearly articulated his rationale for discounting Rorick's opinions. The ALJ's assessment, supported by the cited evidence, is supported by substantial evidence. This argument is, therefore, rejected.

**II.      The ALJ Properly Assessed Plaintiff's Subjective Allegations**

At the administrative hearing, Plaintiff testified that she was unable to work because she "can't remember anything" and is "just exhausted all the time." (PageID.87-88). Plaintiff reported that she experiences limited range of motion and constant pain throughout her entire body. (PageID.88-93). Plaintiff also reported that she is unable to "open doorknobs" or hold on to dishes due to the pain in her hands. (PageID.104, 107). Plaintiff reported that she could not lift a gallon of milk, sit or stand for longer than 15 minutes each, or walk more than one block. (PageID.108). The ALJ discounted Plaintiff's testimony, however, concluding that Plaintiff's "subjective complaints do not warrant any additional limitations beyond those established in [her

16

RFC]." (PageID.61-62). Plaintiff argues that she is entitled to relief because the ALJ's rationale for discounting her testimony is not supported by substantial evidence.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009). Instead, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard.

First, it must be determined whether the claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's alleged symptoms. *See* Titles II and XVI: Evaluation of Symptoms in Disability Claims, Social Security Ruling 16-3p, 2016 WL 1119029 at *3-4 (S.S.A., Mar. 16, 2016). Next, the intensity and persistence of the claimant's symptoms are evaluated to determine the extent to which such limit his ability to perform work-related activities. *Id.* at *4-9.[2]

As the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged

---

[2] Social Security Ruling 16-3p rescinded Social Security Ruling 96-7p. *Id.* at *1. However, the adoption of this new Social Security Ruling did not alter the analysis for evaluating a claimant's subjective statements. Instead, as the Social Security Administration stated, it was simply "eliminating the use of the term 'credibility' [so as to] clarify that that subjective symptom evaluation is not an examination of an individual's character." *Ibid.* As courts recognize, aside from this linguistic clarification, "[t]he analysis under SSR 16-3p otherwise is identical to that performed under SSR 96-7p." *Young v. Berryhill*, 2018 WL 1914732 at *6 (W.D. Ky., Apr. 23, 2018).

symptoms." *Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987). As the Sixth Circuit has stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Commissioner of Social Security*, 540 Fed. Appx. 508, 511 (6th Cir., Oct. 4, 2013) (citation omitted).

Nevertheless, the ALJ is not permitted to make credibility determinations based upon "an intangible or intuitive notion about an individual's credibility." *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 247 (6th Cir. 2007). Instead, the ALJ's rationale for discrediting a claimant's testimony "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons

18

for that weight." *Id.* at 248. Accordingly, "blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence." *Id.*

In support of his decision to discount Plaintiff's testimony, the ALJ articulated several reasons. As the ALJ noted, the results of objective testing "reveal relatively unremarkable or mild clinical examination findings as compared to the frequency and severity of symptoms reported by [Plaintiff]." (PageID.61). The ALJ noted that Plaintiff "has not generally received the type of medical treatment one would expect based on the level of limitation alleged by [Plaintiff]." (PageID.61-62). The ALJ further noted that Plaintiff's reported activities were inconsistent with her reports of extreme and debilitating limitations. (PageID.62). The ALJ's rationale is consistent with the record and constitutes an adequate justification for discounting Plaintiff's subjective allegations. Accordingly, this argument is rejected.

## CONCLUSION

For the reasons stated herein, the undersigned recommends that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: November 29, 2018       /s/ Ellen S. Carmody
                              ELLEN S. CARMODY
                              United States Magistrate Judge